McGREGOR W. SCOTT
United States Attorney
PAUL HEMESATH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

FILED

FEB 2 6 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> SCOTT CAVELL, <br><br> Defendant. | CASE NO. 2:19-cr-33 JAM <br><br> PLEA AGREEMENT <br><br> DATE: <br> TIME: 9:15 a.m. <br> COURT: Hon. John A. Mendez |

## I. INTRODUCTION

### A. Scope of Agreement

The information in this case charges the defendant with a single count alleging a violation of 21 U.S.C. §§ 331(a), 333(a)(2) (Causing Misbranded Drugs to be Introduced into Interstate Commerce). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities that may not have been charged in

PLEA AGREEMENT                                        1

the information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will receive.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea

The defendant will plead guilty to the single count in the information. The defendant agrees that he is in fact guilty of this charge and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw his plea should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

### B. Sentencing Recommendation

The defendant and his counsel may recommend whatever sentence they deem appropriate.

### C. Fine

The defendant agrees to pay $10,000 as a criminal fine. Payment shall be due 20 calendar days from the date of judgement and commitment. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the stipulated fine as required by this plea

agreement.

### D. Special Assessment

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing. If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

### E. Defendant's Violation of Plea Agreement or Withdrawal of Plea

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision to exercise the options stated in the previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph,

notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions. The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition: (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F.  Forfeiture/consent judgment/restitution

The parties agree that forfeiture and restitution issues shall be resolved at the time of sentencing. The parties also understand that this plea agreement shall not bind the government with regard to criminal or civil forfeiture proceedings (or other financial actions) against other persons or entities.

## III.  THE GOVERNMENT'S OBLIGATIONS

### A.  Recommendations

#### 1.  Incarceration Range

The government will recommend that the defendant be sentenced to 36 months of imprisonment.

The government also agrees to request that any imprisonment recommended for the violation of the term of supervised release be run concurrently to imprisonment for this matter.

#### 2.  Acceptance of responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the

pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

### B. Use of Information for Sentencing

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offenses to which the defendant is pleading guilty:

As to the single count in the information—causing misbranded drugs to be introduced into interstate commerce in violation of 21 U.S.C. §§ 331(a), 333(a)(2):

1. That the defendant introduced drugs into interstate commerce; and
2. That the defendant knowingly misbranded those drugs;
3. That the defendant did so with the intent to materially mislead or defraud the ultimate consumer or government enforcement agencies regulating the drugs;

The defendant fully understands the nature and elements of the crimes charged in the information to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCE

### A. Maximum penalty

The maximum sentence that the Court can impose is three years of incarceration, a fine of $10,000, a one-year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not

PLEA AGREEMENT 5

restricted to the amounts alleged in the specific counts to which the defendant is pleading guilty. The defendant further agrees, as noted above, that he will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

### B.   Violations of Supervised Release

The defendant understands that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to one year of additional imprisonment.

## VI.   SENTENCING DETERMINATION

### A.   Statutory Authority

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

### B.   Guideline Calculations

The parties disagree regarding the calculation of loss and other application of factors, but the parties agree that the total offense level, including specific offense adjustments and acceptance of responsibility, is 19. The parties reserve the right to argue for an upward or downward departure to arrive at an offense level of 19. The parties acknowledge that the government will not move for a downward departure under §5K1.1.

The defendant is free to recommend to the Court whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a). The government will argue for a 36-month sentence.

PLEA AGREEMENT                                     6

## VII.   WAIVERS

### A.   Waiver of Constitutional Rights

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed; (e) to subpoena witnesses to testify on his behalf; (f) to confront and cross-examine witnesses against him; and (g) not to be compelled to incriminate himself.

### B.   Waiver of Appeal and Collateral Attack

The defendant understands that the law gives the defendant a right to appeal his guilty plea, conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the maximum sentence allowed by law. The defendant understands that this waiver includes, but is not limited to, any and all constitutional and/or legal challenges to the defendant's conviction and guilty plea, including arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts attached to this agreement is insufficient to support the defendant's plea of guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

Notwithstanding any provision in this agreement, if the defendant ever attempts to vacate his

plea, dismiss the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading guilty, the government shall have the rights set forth in paragraph II.E (Defendant's Violation of Plea Agreement) herein.

### C. Waiver of Attorneys' Fees and Costs

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matter and of any related allegations (including without limitation any charges to be dismissed pursuant to this plea agreement and any charges previously dismissed).

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated: 2/19/19

Ronald Peters
Counsel for Defendant

Dated: _____

Rick Collins
Counsel for Defendant

### B. Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney. I

PLEA AGREEMENT                               8

understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 2/19/19

SCOTT CAVELL, Defendant

C.  **Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated: 2/19/19

McGREGOR W. SCOTT
United States Attorney

By:

PAUL HEMESATH
Assistant United States Attorney

**EXHIBIT "A"**
**Factual Basis for Plea**

If this matter proceeded to trial, the United States would establish the following facts beyond a reasonable doubt:

In 2015 through 2017, defendant SCOTT CAVELL, with others, developed a scheme to market and sell a drug, 2,4-Dinitrophenol (also known as DNP), as a weight loss drug and "fat burner" despite his knowledge that DNP is unapproved by the FDA as a substance for human consumption. CAVELL accomplished this by selling DNP in pill form but calling it a "fertilizer" – a term under which is it legally sold in other circumstances.

DNP is an organic compound that is used in the body building community for the purpose of achieving rapid weight loss. DNP has been commercially used in the manufacturing of dyes and wood preservatives, as a fertilizer, and as a pesticide. The United States Food and Drug Administration ("FDA") has declared that DNP was too toxic to be used for human consumption under any circumstance. A lethal dose following oral exposure was approximately 14 to 43 milligrams per kilogram of body weight. DNP has been marketed as a weight loss aid because, when ingested by humans, DNP increases the body's metabolic rate and causes weight loss.

Because no drug containing DNP has been approved by the FDA, and because any drug containing DNP would be a prescription drug by definition, there could be no labeling bearing adequate directions for its use or adequate warnings against its use when consumed by humans.

CAVELL and others working with him arranged for the purchase of bulk DNP, compounded DNP in pill form, and marketed DNP pills on various websites. While some of these health-supplement websites (e.g., enhancedathlete.com) ostensibly discouraged the human consumption of DNP, CAVELL and others promoted the use of DNP as a weight control drug on other websites. CAVELL and others then directed potential customers to thefertilizerwarehouse.com, which sold the DNP pills labeled as fertilizer products. Enhancedathlete.com then collected money from the sale of DNP through thefertilizerwarehouse.com. Buyers of the pills knew that they were buying DNP for human consumption, despite the labels, because CAVELL, with others, advocated for the ingestion of DNP and because customers bought DNP in pill form.

CAVELL, with others, organized the structure of the companies, the e-commerce payment systems, the websites, and the pill-distribution methods to disassociate the sale of DNP as a "fertilizer" from the health supplement companies he controlled (enhancedathlete.com). CAVELL admits that he did this to mislead and defraud the regulating authority of such compounds, the FDA. CAVELL admits that his acts to mislead and defraud were material, in that he was aware that the FDA would not approve the sale or branding of DNP for human consumption.

CAVELL admits that he knew that DNP was not approved by the FDA for human consumption, and for that reason, he did not offer DNP pills for sale on enhancedathlete.com. CAVELL further admits that he knowingly shipped DNP in interstate commerce with the understanding that buyers were paying for "fat burning" drugs—not for "fertilizer." By calling the DNP pills "fertilizer" but advertising, compounding them (in pill form), and pricing them well above what one would pay for fertilizer, CAVELL effectively misbranded the DNP fertilizer as a fat-burning pill.

CAVELL admits he knowingly caused the shipment of DNP in pill-form to various other states, including that instance set forth in the information in this case, from Sacramento, California.

Throughout the course of CAVELL's involvement with enhancedathlete.com and thefertilizerwarehouse.com, between $550,000 and $1,500,000 of DNP was sold to customers.

CAVELL was provably knowledgeable about the misbranding scheme because, when agents of

PLEA AGREEMENT          A-1

1  the FDA contacted the management of enhancedathlete.com in an undercover capacity, CAVELL
2  personally vouched for the effectiveness of DNP as a weight-loss drug.

3  Dated: 2/15/19                                         /s/ Scott Cavell
4                                                         SCOTT CAVELL, Defendant